The opinion of the court was delivered by
Tilghman, C. J.
The defendants’ counsel have made three points. 1. That the partnership was dissolved by the death of Carrell. 2. That supposing it not dissolved, the private estate of Carrell was not liable for any debts contracted after his death. 3. That the assignment of Carrell passed no more than his interest in the effects of the firm.
1. Concerning the general law of partnership, there can be no doubt. Where no time is fixed for its duration, either partner may dissolve it, at his pleasure. And unless there be an express stipulation to the contrary, it is dissolved by the death of either party. But I can find no authority for this position, that it is dissolved by death contrary to express stipulation. By the Roman law, it might have been so. But in the present state of commerce, we are not to take our rules from the Roman law. Even France, who in general, has adopted the civil law, has rejected it in this particular. It is provided by the code civil, that partnership may be. continued after.death, where such is the agreement of the parties. There are conveniences and inconveniences, fix this rule how you will. If you say, that the partnership shall be dissolved by death, against the agreement of the parties, you may deprive the family of the deceased, of all the profits of an establishment which had been erected at great expense, and is beginning to reimburse those expenses, with interest, at the moment of death. On the other hand, by continuing the partnership, it may happen, that a capital which had been established by many years of properous business, may be sunk, by the misconduct, or misfortune of the surviving partner. But the question is, how has this law been understood? In the case of Balmain v. Shore, 9 Vez. 500, the subject was a good deal discussed,* and it seems to have been taken for granted, on all sides, that a partnership may continue after death, by express agreement. The same remark is applicable to the case of Pearce v. Chamberlain, 2 Vez. 33. A. D. 1750. In Warner v. Cunningham, 3 Dow. Parl. Cas. 76, it was decided by the house of *47 Lords, on an appeal from Scotland, that a partnership in a colliery and iron works, may be continued, after the death of one partner, where it was so agreed. The elementary authors consider the law as so settled. Gow. 76, 271,/ And if there be a decision to the contrary, the counsel for the defendants have not produced it, nor have I been able to find it. Now it is incumbent on him who asserts, that a man has not a right to make a covenant that shall bind his representatives, to prove it, by good authority; because the general principle is, that he may bind them.
2. Talcing it for granted then, that the'partnership was not dissolved by the death of Carrcll, the next point made by the defendants’ counsel is, that the private estate of Carrell, was not'liable to the payment of the partnership debts contracted after his death. The dispute is between the partnership creditors and the children of Carrell; for no private debts appear. The defendants are but stakeholders. It is indifferent to them, to whom the money in their hands is to be paid. But it appears to me, that the question raised by the defendants’ counsel is not material, or at least that it is unnecessary to the decision of the cause. The defendants are not sued as representatives of Carrell. They have no assets of his in.their hands. Those assets were paid by his administrators to Carrell, as guardian of the children, and if he applied them without right, to the purposes of the partnership, he was guilty of a breach of trust, for which he was responsible. But the minor chiL dren of Carrell had no lien on the money in the hands of their guardian. It has passed into the partnership funds, with which it is now so blended that it is impossible to distinguish it. I give no opinion whether Carrell had a right to use this money for partnership purposes, or not. If he had not, although he would be personally responsible, it might be a question whether it might not be considered as a partnership debt. But even if it were, it would not interfere with the plaintiff’s right to recovery in this suit, -
3. The third consideration is, whether the whole partnership fund, including what was acquired after the death of Carrell, did not pass, by Connell’s assignment. I can perceive' nothing against 'its passing. The surviving partner was the only person who had a right to act, either as to the disposal of the partnership effects, or the receiving or paying of debts. He had a right to apply all the funds to the payment of debts, and the assignment is, in substance, no more than such an application. The property is transferred to the defendants in trust to pay the debts, in the order prescribed by the assignor. So that I think there can be no doubt, that the transfer is good for the whole. In the argument of this case, several points of'great moment were suggested, which must add to the regret we all feel, at the want of a Chancery jurisdiction. By the articles of partnership in this case,. Connell was to carry on the business, in the event of his partner’s death, subject to the advice and inspection of his executors or administrators. I do not con *48 ccive, that this provision gave power to the executors or administrators, to dissolve the partnership, if Connell should run counter to their advice. It does not appear, indeed, that any advice was given, nor am I imputing blame to Mr. Connell7 who appears to have been ruined by pursuing the scheme which had been devised by his partner. But if prospects had so changed, after CarrelPs death, as to render it manifestly advisable to relinquish the plan, and he refused to relinquish it, contrary to the advice of the administrators of Carrell, I know not how he could have been restrained. But chancery, in such case, would interfere without hesitation. And in many other eases it would interfere, where there was strong probability that the salvation of the firm, and the rights of creditors, depended on such interference. If the survivingpartner acted with gross impropriety, his hands would be tied, and an agent appointed to collect the debts and distribute the effects under the direction of the court. These are powers, which however desirable, are possessed by no court in this commonwealth. Although the sentiments which I have expressed, do not strictly belong to the decision of this case; yet while I was considering what is directly before us, they pressed so strongly on my mind that I trust I may be excused for giving them utterance. To return to the point then, I am of opinion, that upon the evidence submitted to us, the plaintiff is entitled to judgment on the verdict.
Judgment reversed and a venire facias de novo awarded.